A.  IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BEHZAD SABAGH | CRIMINAL ACTION<br>NO.  21-261 |

### MEMORANDUM OPINION

In 2019, Defendant Behzad Sabagh and others were charged with crimes related to the payment of bribes to the Philadelphia Sheriff's Office.  One of the defendants (hereinafter "the Cooperating Witness") pled guilty and cooperated with the Government against other individuals, including Defendant.  Defendant was convicted and sentenced to one month in prison and three years of supervised release.  Meanwhile, as alleged in the indictment, the Cooperating Witness's sentencing hearing was scheduled for December 18, 2019, but postponed twice, first to February 20, 2020 and then to March 6, 2020.  After Sabagh's release, around the time of each scheduled sentencing hearing of the Cooperating Witness, Sabagh sent the Cooperating Witness a provocative text message.

These texts form the basis of a new indictment against Defendant.  The indictment charges nine counts of retaliation against a witness, in violation of 18 U.S.C. § 1513(b)(2).  Each retaliation count in the indictment sets forth the text of a message the Defendant sent to the Cooperating Witness and alleges that the Defendant knowingly engaged in conduct which threatened to cause bodily injury to the Cooperating Witness 1 and his family, with the intent to retaliate against to the Cooperating Witness for information he provided to law enforcement relating to Sabagh's federal crimes.  In Count Ten, the Defendant is charged with tampering with a witness based on the same text as in Count Nine, in violation of 18 U.S.C. § 1512(b)(2)(D).

1

Defendant now moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state an offense on the grounds that the context of the text messages do not contain a "threat" to do "bodily injury" within the meaning of the statutory provisions pursuant to which he was charged.  For the reasons that follow, Defendant's Motion to Dismiss Counts One Through Ten of the Indictment will be granted as to Count Ten and denied as to Counts One through Nine.

### B. LEGAL STANDARDS

A defendant may bring a motion to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v).  A court's review of such a motion is "a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).  The factual allegations set forth in the indictment must be accepted as true. *Id*.  "A ruling on a motion to dismiss is not . . . 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *Id*. at 265 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000)).  "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." *Id*. (internal quotations and alterations omitted).  Any challenge to the sufficiency of the indictment must "be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). "Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those [allegations] as true, a jury could find that the defendant committed the offense for which he was charged." *United States v. Huet*, 665 F.3d 588, 595-96 (3d Cir. 2012), *cert denied*, 568 U.S. 941 (2012), *abrogation on other grounds recognized by United States v. Boyd*, 999 F.3d 171 (3d Cir. 2021).  An indictment "fails to state an offense if the specific facts [it] allege[s] fall beyond the scope of the relevant criminal statute, as a matter

of statutory interpretation.'" *Bergrin*, 650 F.3d at 264-65 (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)). "To avoid violating the First Amendment, threat statutes must be read to criminalize only 'true threats.'" *United States v. C.S.*, 968 F.3d 237, 244 n.7 (3d Cir. 2020).

Defendant argues that the indictment fails to state an offense because the alleged communications do not constitute "true threats" within the meaning of 18 U.S.C. § 1513(b)(2) or 18 U.S.C. § 1512(b)(2)(D).[1] Thus, in this case, the indictment may properly be dismissed "as a matter of law if [the Court] concludes that no reasonable jury could find that the alleged communication constitutes . . . a true threat." *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) (citing *Huet*, 665 F.3d at 596).

True threats are those which "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The "prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id*. at 360 (alteration in original). Thus, while a statement that refers only to past conduct or intent is not a true threat, *Stock*, 728 F.3d at 300, using past incidents to instill fear in future targets can be a true threat. *Fullmer*, 584 F.3d at 156 (after animal rights activists assaulted the executive of a research corporation that tested products on animals, displaying photos of his injuries on protest placards constituted a true threat that "rightly instilled fear in the listeners"). Even conditional statements can constitute true threats. *See Kosma*, 951 F.2d at 554 n.8 (letters inviting President Reagan to Philadelphia on a

---

[1] In his brief, Defendant uses interchangeably "threats," "real threats," or "actual threats." This language will be interpreted as synonymous to the term of art "true threats."

3

certain date for a "21 Gun-Salute" that would "put bullets thru [his] heart & brains" constituted true threats, even if "truly conditional" on his acceptance of the "invitation"); *United States v. Elonis*, 730 F.3d 321, 334 (3d Cir. 2013) (reasonable jury could find that statement threatening to use explosives on police if they sought to enforce protective order constituted true threat), *overruled on other grounds by* 575 U.S. 723 (2015); *Stock*, 728 F.3d at 300 (jury could reasonably find that statement implying that the speaker would kill his intended victim if only he could find him was a true threat).  Hyperbole, by contrast, will typically not amount to a true threat.  Thus, when a Vietnam war protestor declared, "[i]f they ever make me carry a rifle the first man I want to get in my sights is [President Johnson]," he was engaging in political hyperbole, not issuing a true threat against the President's life. *Watts v. United States*, 394 U.S. 705, 707-08 (1969) (considering the context (a political rally), the "expressly conditional nature of the statement" (the speaker vowed he would not report for the draft) and the listeners' reaction (laughter)); *Cf. United States v. Kosma*, 951 F.2d 549 (3d Cir. 1991) (menacing letters sent directly to President constituted true threats).[2]

"In deciding whether speech constitutes a 'true threat,' a court should consider the totality of the circumstances and not just the words in isolation, whether the threat is 'conditional,' and the reaction of the listeners." *Fullmer*, 584 F.3d at 154.  While the question of whether a

---

[2] In setting forth his asserted definition of "true threat," Defendant quotes three cases from Courts of Appeals that do not bind this Court.  First, Defendant cites to *United States v. Velazquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) for the premise that "threats that are rhetorical rather than real are not punishable under statutes similar to Section 1513." Read in context, this statement from *Velazquez* is dicta in support of its holding that Section 1513 is constitutional even though it "fails to distinguish between the rhetorical and the real," an issue not raised in this case.  Moreover, *Velazquez* cites to the Third Circuit's decision in *Watts* as a case that supports this premise.  This Court does not dispute the Seventh Circuit's characterization of *Watts* as a case that distinguished rhetoric from true threats, but it is not clear how Defendant wishes that interpretation to be applied here, as he does not claim that any of his statements were "rhetorical."  Second, Defendant cites to the dissent in *Unites States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1996), which can have no persuasive appeal for this Court.  Finally, Defendant cites to *Martin v. United States*, 691 F.2d 1235 (8th Cir. 1982), an inapplicable case about whether an allegedly ambiguous letter constituted a threat under 18 U.S.C. § 876—a question the court held was properly for the jury, *see id.*, at 1240.

communication constitutes a "true threat" is generally a matter for the jury, a "few cases may be so clear . . . that they can be resolved as a matter of law."  *Stock*, 728 F.3d at 298 (quoting *Kosma*, 951 F.2d 549, 555 (3d Cir. 1991)).

### C.  DISCUSSION

#### (1) Counts One to Nine

The first nine counts of the indictment charge Defendant with retaliating against a witness by "knowingly engag[ing] in conduct which threatened to cause bodily injury" to the Cooperating Witness and, in some instances, to his family, "with the intent to retaliate against [the Cooperating Witness] for information given by [the Cooperating Witness] to a law enforcement officer relating to defendant SABAGH's commission of a Federal offense" under 18 U.S.C. § 1513(b)(2).  In its opposition brief, the Government alleges that Sabagh "used phone numbers that he obtained through apps to send the threatening text messages anonymously."  The indictment, however, does not make this allegation and it therefore cannot be assumed as true.  Nevertheless, in cases where it is apparent from the face of the exchange that the Cooperating Witness did not know the identity of the sender, that circumstance will be taken into account.

The elements of a Section 1513(b)(2) charge here are:[3] (1) that Sabagh knowingly engaged in conduct; (2) that such conduct caused or threatened to cause bodily injury to the Cooperating Witness and/or his family; and, (3) that Sabagh acted with specific intent to retaliate

---

[3] 18 U.S.C. § 1513(b)(2) provides:

> (b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for— . . . (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

against the Cooperating Witness for providing information to law enforcement relating to the commission or possible commission of a Federal offense.  *See* Mod. Crim. Jury Instr. 3rd Cir. 6.18.1513B (2021).  In their briefs, the parties do not carefully parse out the applications of each of these elements to the allegations of the indictment.

Count One of the indictment charges Defendant with threatening bodily injury by sending to the Cooperating Witness 1 a picture of a man inside a jail cell followed by the words "Wash your ass."  This text was sent on December 17, 2019, the day before the Cooperating Witness's first-scheduled sentencing hearing.  Defendant concedes that these words were a "reference to the fact that [the Cooperating Witness] may be sexually violated if incarcerated," but avers that the communication does not constitute a threat because the Cooperating Witness's incarceration was speculative and out of Defendant's control.  This argument fails, however, because "[t]here is no rule that conditional statements, statements 'convey[ing] a vague timeline or condition,' or even wishes can never be a true threat."  *C.S.*, 968 F.3d at 245.  Furthermore, the "prohibition on true threats protects individuals from the fear of violence."  *Black*, 538 F.3d at 360.  A reasonable juror could find that this allusion to sexual assault constituted a "true threat," because it might reasonably have put the Cooperating Witness in fear of violence—whether by Sabagh or an incarcerated person known to Sabagh—even if his imprisonment was not an event certain.  Therefore, Count One states an offense within the meaning of the statute.

Count Two is based on text messages sent on December 18, 2019, the day of the Cooperating Witness's sentencing hearing.  Sabagh sent a video of a man in jail, to which the Cooperating Witness replied, "Who is this."  Sabagh responded, "Just ask your wife when u get released."  Near the end of the exchange, the Cooperating Witness said, "I have a great wife and kids that love me!! How bout you?? What do u have," and Sabagh replied, "I take care of people's wives when they are away."  Defendant argues that these communications contain no

allegation or suggestion that his taking "care" of the Cooperating Witness' wife "would be forceful, involuntary, or could ever happen." A communication may constitute a "true threat," however, even if the speaker has no intention of carrying it out. *Black*, 538 U.S. at 359-60. As to forcefulness, the messages contain no hint that Defendant and the Cooperating Witness' wife were in a consensual relationship or that his "taking care" of her would be conditioned on her consent. The fact that at the outset of the series of messages the Cooperating Witness did not know who the sender was heightens the likelihood that this text would be perceived as threatening rather than "comical" as the Defendant would have it. A reasonable juror could find that Defendant was seriously expressing an intent of assaulting the Cooperating Witness's wife while the Cooperating Witness was in prison, putting them in fear. Therefore, Count Two states an offense.

Count Three concerns messages sent by Defendant on December 31, 2019. Defendant sent a picture of the Cooperating Witness's children, accompanied by the words, "How old are they? Be respectful I asked you a question Did your buddy Feds tell you not to talk to me? Yo convict I am talking to you. Don't make me come over xxx Kenilworth You need to change those chandelier bulbs to LED." He then texted the word "jail" eight times, followed by, "Did u wash your ass?" Defendant argues that the messages are just continuing the "theme" that the Cooperating Witness "is going to jail" and that they contain "no suggestion or threat that Defendant intended to harm [the Cooperating Witness's] children." A reasonable juror, however, could read this text as indicating that Defendant knew where the Cooperating Witness lived in that he had seen the inside of his home, and could from that conclude that adding the photograph of the children to the text was a true threat. Furthermore, as discussed above, the reference to sexual assault could reasonably be interpreted as a true threat. Count Three states an offense.

Count Four relies on a short exchange from February 16, 2020, four days before the Cooperating Witness's rescheduled sentencing hearing. Defendant texted "tick tuck" the Cooperating Witness replied, "? Who's this." Sabagh answered, "The person that doesn't have $10 to its name Answer 'I am gonna fuck your wife' by the way, I ll be at your sentencing." Defendant argues that there is "no threat that he would be having sex with Complainant's wife involuntarily" and that appearing at a hearing open to the public "is certainly not a threat." A reasonable juror could disagree. As explained above, Defendant's comments about having sexual relations with the Cooperating Witness's wife could reasonably be seen as true threats, and the anonymity of the text adds to that likelihood. While the words "I'll be at your sentencing" might ordinarily sound innocuous or even supportive, the context here would allow a reasonable juror to perceive a true threat. Count Four states an offense.

Count Five relates to messages exchanged on February 19, 2020, one day before the rescheduled hearing. The first text asked the Cooperating Witness, "how much deposit do you need?" The Cooperating Witness responded, "5% per lot," to which Sabagh replied, "do I get to fuck your wife if I pay 10%? . . . someone got to tap it while you're away. I know you think I am kidding. but I'll promise I'll fuck your wife while you are away!" Defendant characterizes these sexual comments as "humorous banter" made "in jest." For the reasons already discussed, a reasonable juror could disagree. Count Five states an offense.

Count Six concerns texts sent on February 20, 2020, the day of the rescheduled sentencing hearing. Defendant wrote, "every second I get 1 step closer to fucking your wife. what a good day [Emojis] you can postponed all you want. but you have to face the music sooner or later fuck face!!!!!! 3/6/2020." Defendant describes this message as "non-threatening humorous banter" about "how eager Defendant was to have sex with [the Cooperating Witness's wife] when [the Cooperating Witness] is imprisoned." For the same reasons mentioned

previously, such references to sex with the Cooperating Witness's wife could reasonably be viewed as true threats. Count Six states an offense.

Count Seven charges Defendant with respect to texts sent on March 4, 2020, two days before the third sentencing date scheduled for the Cooperating Witness. Defendant asked, "what is the code for the lockbox?" the Cooperating Witness replied, "Which property" and Sabagh answered, "the one that I am going to fuck your wife in while you're gone." Defendants calls this a "priceless exchange" about an affair with the Cooperating Witness's wife. Again, there is no suggestion that any affair would be consensual and a reasonable juror could find these communications constituted a true threat. Count Seven states an offense.

Count Eight charges that, on March 6, 2020, the day of the third-scheduled sentencing hearing, Defendant sent the following texts: "did u wakeup on time? today is the judgment day!!!!! Grease your ass [emojis] . . . what did you get? or u got it postponed again? sooner or later you have to face the music! then u gotta face us!!!! enjoy it while it lasts!" By way of explanation, Defendant asserts that these texts simply discuss the "consequences" of going to jail and are not a threat. To the contrary, like the expression "wash your ass," the phrase "grease your ass" could reasonably be interpreted as a reference to sexual assault, and when viewed in context with the following phrase, "u gotta face us," the whole could reasonably be interpreted as a true threat. Count Eight states an offense.

Count Nine is based on a text sent on March 9, 2020, stating: "there are many people that don't want you around. this story won't have a happy ending for you and yours. Leave town it's not worth the risk!" Defendant contends that no threat could be inferred here because the text is just "open-ended speculation" about how people will react when the Cooperating Witness is released from prison, and does not refer to Defendant. However, a reasonable juror could find that this message, as a whole, constitutes a true threat that would cause the Cooperating Witness

to fear for his well-being and that of his family, regardless of whether Defendant intended to carry out the expected unhappy ending or merely wished that other people would. Count Nine states an offense.

In sum, Counts One to Nine each state an offense within the scope of 18 U.S.C. § 1513(b). Whether the evidence adduced by the Government at trial suffices to prove beyond a reasonable doubt Defendant's guilt is a question for the jury at trial.

### (2) Count Ten

Count Ten of the indictment charges Defendant with tampering with a witness based on the same text as in Count Nine: "there are many people that don't want you around. this story won't have a happy ending for you and yours. Leave town it's not worth the risk!" Specifically, the indictment charges that Defendant "knowingly attempted to intimidate, threaten, and corruptly persuade [the Cooperating Witness], by sending a text message encouraging [the Cooperating Witness] to leave town, with the intent to cause and induce [the Cooperating Witness] to be absent from an official proceeding to which [the Cooperating Witness] had been summoned by legal process, that is, [the Cooperating Witness's] federal sentencing hearing."

To prove tampering with a witness under Section 1512(b)(2)(D),[4] the Government must show: (1) that Sabagh knowingly used intimidation, threatened, or corruptly persuaded the Cooperating Witness, or attempted to do so; (2) that Sabagh acted with intent to cause or induce the Cooperating Witness to be absent from his sentencing hearing, an official proceeding to which he had been summoned by legal process; (3) that Sabagh knew or should have known that

---

[4] 18 U.S.C § 1512(b)(2)(D) provides:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to— . . . (2) cause or induce any person to— . . . (D) be absent from an official proceeding to which such person has been summoned by legal process; . . . shall be fined under this title or imprisoned not more than 20 years, or both.

the Cooperating Witness's sentencing hearing was pending or was likely to be instituted; and, (4) that the sentencing hearing was a federal proceeding. *See* Mod. Crim. Jury Instr. 3rd Cir. 6.18.1512B (2021). Furthermore, there must be a nexus between the defendant's conduct and a particular official proceeding. *United States v. Tyler*, 732 F.3d 241, 249-50 (3d Cir. 2013). The nexus requirement is met if, when the defendant attempted to tamper with the witness, he contemplated a particular, foreseeable official proceeding. *Id*. at 248-49 (citing *United States v. Shaver*, 693 F.3d 363, 378-79 (3d Cir. 2012), *vacated on other grounds by* 570 U.S. 913 (2013)).

In its brief, the Government argues that the Cooperating Witness's sentencing hearing was foreseeable as of March 9, 2020, when Defendant sent this text. Specifically, the Government explains that on March 6, the Cooperating Witness's sentencing hearing was continued for a third time to a then-unknown future date. Thus, the Government contends, its eventual occurrence was foreseeable as of March 9 even though no date had yet been set. But the face of the indictment gives one to understand that the Cooperating Witness's sentencing hearing finally proceeded on March 6, because it does not allege that the hearing was rescheduled a third time. To determine whether the indictment states an offense, the Court can look only to the facts alleged within the four corners of the indictment, not to supplemental facts alleged in the Government's briefs. *Vitillo*, 490 F.3d at 321.[5] Count Ten therefore fails to state an offense because it charges Defendant with attempting to make the Cooperating Witness absent himself from a proceeding that had, according to the facts as set forth in the indictment, already occurred and does not allege that Defendant had any other foreseeable proceeding in view.

---

[5] Nor can the Government amend the indictment to add the missing facts through their opposition brief. *Russell v. United States*, 369 U.S. 749, 770 (1962) ("[A]n indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.").

An appropriate order follows.

            **BY THE COURT:**

            */s/ Wendy Beetlestone*

            **WENDY BEETLESTONE, J.**